**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JOSHUA W. BARBEE, #Y52589,     )
          )
      **Plaintiff,**     )
          )
   **vs.**      )      **Case No. 25-cv-02117-SMY**
          )
C/O JOHNSON,     )
LT. WALSH, and     )
C. CROW (Warden, BMRCC),     )
          )
      **Defendants.**     )

## MEMORANDUM AND ORDER

**YANDLE, Chief Judge:**

Plaintiff Joshua W. Barbee, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during his imprisonment at Big Muddy River Correctional Center. He claims defendants were deliberately indifferent to his suicide attempt and requests for mental health care and seeks monetary damages. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was on a ten-day hunger strike and felt suicidal on October 18, 2024 (Doc. 1, p. 5). At about 10:55 a.m., he asked Defendant Johnson for a crisis team but was ignored. Plaintiff pressed the emergency button

1

repeatedly for help between 12:10 to 12:38 p.m.  Johnson eventually responded but told Plaintiff the mental health worker said she would not see him because she talked to Plaintiff the previous day (Doc. 1, pp. 5-6).  Plaintiff told Johnson he would hurt himself if he did not get a crisis team. Johnson informed Defendant Lt. Walsh of Plaintiff's request, but according to Johnson, Walsh refused to summon any mental health assistance (Doc. 1, p. 6).

Plaintiff spent two hours cutting his arm with a blade.  At 2:25 p.m. he showed Johnson his bleeding cuts, but Johnson walked away without calling the nurse or providing help. Plaintiff continued screaming and cutting his arm.  Defendant Warden Crow arrived at 2:35 p.m. and saw Plaintiff's wounds.  Crow told Plaintiff to drink fluids and eat, and he was not going anywhere. Crow did not call an emergency code.

At 2:41 p.m. Plaintiff was taken out of his cell (Doc. 1, p. 6).  While walking to medical, he lost consciousness (Doc. 1, p. 7).  He woke up to discover he was handcuffed behind his back. Officers called a code and took him to medical on a stretcher.  At around 4:00 p.m., Plaintiff was taken to SSM Good Samaritan Hospital in Mt. Vernon, where he received 50 stitches for his self-inflicted wounds.  If Plaintiff had seen a mental health crisis team, he would not have harmed himself.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1:  Eighth Amendment deliberate indifference to serious mental health needs claim against defendants for failing to summon a mental health crisis team when Plaintiff reported he planned to harm himself on October 18, 2024.

> Count 2:  Eighth Amendment deliberate indifference to serious medical needs claim against defendants for delaying/denying Plaintiff medical care after he cut himself on October 18, 2024.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be

considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Discussion

### Count 1

Prison officials' deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Suicide is objectively serious. An official is deliberately indifferent to the risk of suicide when the official is "aware of the significant likelihood that an inmate may imminently seek to take his own life" yet "fail[s] to take reasonable steps to prevent the inmate from performing the act." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014) (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)).

Plaintiff alleges he twice asked Johnson for a crisis team and informed him he would hurt himself if a crisis team was not summoned. He further alleges that Johnson talked to a mental health worker who refused to see Plaintiff and also told Walsh that Plaintiff wanted a crisis team, but Walsh did nothing. These allegations are sufficient to state a viable deliberate indifference claim in Count 1 against Johnson and Walsh.

Warden Crow will be dismissed from Count 1. Plaintiff does not allege that Crow was made aware of Plaintiff's request for mental health care or his self-inflicted wounds until after

Plaintiff cut himself.  As such, Crow cannot be found to have been deliberately indifferent to Plaintiff's need for a crisis team or mental health care.  Count 1 will proceed only against Johnson and Walsh.

**Count 2**

Plaintiff's allegations that he cut himself repeatedly, resulting in bleeding wounds that required 50 stitches, and that he lost consciousness while walking to the medical department, indicate that his medical condition was objectively serious.  However, his description of Johnson's reaction once he saw Plaintiff's cuts does not suggest deliberate indifference.

Although Plaintiff alleges Johnson walked away without requesting help, it appears Johnson summoned Warden Crow, who arrived ten minutes later.  And while Plaintiff complains that Crow would not call an emergency code, Plaintiff was taken to the medical department six minutes after Crow's visit to his cell.  A code was called when Plaintiff collapsed, and he was taken to an outside hospital for stitches about one hour and 20 minutes after leaving his cell.

Plaintiff's factual statements suggest Johnson and Crow obtained treatment for him without unnecessary delay.  Because he does not allege any involvement by Walsh after he began cutting himself, there are no facts of record suggesting Walsh was deliberately indifferent to Plaintiff's arm wound.  For these reasons, Count 2 will be dismissed without prejudice for failure to state a claim upon which relief may be granted; Defendant Crow will be dismissed as a party.

**<u>Official Capacity Claims</u>**

Plaintiff raises claims against each defendant in his or her individual and official capacities (Doc. 1, p. 2).  However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities.  *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987).  Accordingly, the official capacity claims

4

against the individual defendants are dismissed without prejudice.

## Disposition

The Complaint states colorable claims in Count 1 against Johnson and Walsh.  Count 2 and Warden C. Crow are **DISMISSED** without prejudice.

The Clerk shall prepare for C/O Johnson and Lt. Walsh: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C.

§ 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

> **IT IS SO ORDERED.**
>
> **DATED:  May 26, 2026**

> _____
> **STACI M. YANDLE**
> **Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.